CAUSE 2013-CI-18355

| | | |
|---|---|---|
| HELVETIA ASSET RECOVERY INC § | | IN THE DISTRICT COURT |
| PLAINTIFF § | | |
| VS. § | | |
| § | | OF BEXAR COUNTY, TEXAS |
| BURTON KAHN § | | |
| DEFENDANTS § | | 37th JUDICIAL DISTRICT |

## DEFENDANT'S SECOND AMENDED MOTION
## FOR SANCTIONS AGAINST LISA BARKLEY

TO THE HONORABLE COURT;

COMES NOW, BURTON KAI]N("Kahn") Individually Defendant and Co-Plaintiff due to a hearing on February 9, 2014, Judge Pozza signer of the temporary Injunction against Kahn instructed Kahn to file this request in Presiding Court. The injunction states that Kahn is enjoined, (Page 4 of Temporary Injunction Order) "a. taking any action on behalf of Helvetia", without specifying what action per Tex. R. Civ. P 683. The relief requested is a lawful request to have the Defendant bring the ease to a status quo.

In *Webb v. GieubrookOwners Asso.,* 298 S.W.3d 374 (Tex. App. -Dallas *2009,* no pet.)

> "An injunction should be broad enough to prevent a repetition of the evil sought to be corrected. *Hiss V Mabrp,* 687 S.W.2d *791 at 795.* An injunction must not be so activities that are a lawful and proper exercise of his rights. In. Where a party's acts are divisible, and sonic acts are permissible and soiiie are

**EXHIBIT 4**

not, an injunction should not issue to restrain actions broad, however, as to enjoin a defendant from that are legal or about which there is no asserted complaint. *Id.* (citing **Hellenic v. Kroger Co.,** *766 S. W.2 d 861, at 867).* *Thus*, the entry of an injunction that would be enjoins lawful as well as unlawful acts may constitute an abuse of discretion. *Id"*

COMES NOW, Burton Kahn ("Defendant"), files Defendant's Second Amended Motion For Sanctions against Lisa Barkley ("Barkley") whose client is Helvetia Asset Recovery Inc.("Helvetia") and Puerto Verde Ltd.("PVL"). PVL is a Bahamian Corporation without a Certificate of Authority and is not allowed to maintain a lawsuit in Texas per Tex. Bus. Org. 9.051 (b) and respectfully shows the Court as follows.

Kahn ("Kahn") filed an Appellant's Affidavit of Inability to Pay Costs on Appeal and Barkley has filed "Intervener's Contest to Appellant's Affidavit of Inability to Pay Costs on Appeal" on July 7, 2014. **EXHIBIT A** Barkley and her clients Helvetia and PVL have no injury regarding the contest and therefore have no standing in this issue of the Inability to Pay Costs of Appeal. Barkley's Contest

motion contains false allegations and factual contentions that have no evidentiary support. . This was done to in bad faith and groundless and brought for the purpose of harassment. Lisa Barkley is the signer of this false and fraudulent document and should be sanction per Tex. Civ. Prac. & Rem. Code §§ *10.001(1)*, 004 and Tex. R. Civ, P. Rule 13.

## I STANDING

The issue of whether, Kahn has or has not funds to pay the costs of Appeal have no injurious claims on Helvetia or PVL. Whether Kahn pays Bexar County fees or makes arrangements with Bexar County to pay fees does not affect Helvetia.

In *Hernandez v. Ebrom,* 13-10-00641-cv (Tex.App.-Corpus Christi 7-14-2011)

> "Texas courts have long held that an appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others." *Torrington Co. v. Stutzman,* '16 S.W.3d 829, 8'13 (Tex. 2000). As a general rule of Texas law, to have standing a plaintiff must demonstrate an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury. *McIVlierter v. Agua Frio Ranch,* 224 S.W.3d 285,290 (Tex. App.-El Paso 2005, no pet.) (citing *Hunt v. Bass, 664 S.W.2d 323,* 324

> (Tex. 1984)). A party must show that its interest has been prejudiced before it has standing to appeal. *Id.* An appealing party cannot complain of errors that do not injuriously affect its rights or that merely affect the rights *of others. Id.* (citing *Buckholts Indep. Sch, Dist, v. Glaser,* 632 S.W.2d 146,150 (Tex. 1982)). A party of record is normally entitled to appeal; however, the party's own interest must be prejudiced before it has standing to appeal. *Id.*

Helvetia has no injury and cannot appeal and its only purpose is to harass.

Helvetia has filed in the bankruptcy case of Burton Kahn a Motion entitled "Plaintiff's Complaint to Determine Dischargeability of Debt Pursuant to 1 1 U.S.C. §523(a)". **EXHIBIT B** Kahn answered this motion And is attached to this Motion as *Exhibit R*. The added burden of answering Helvetia in this Contest of the Affidavit of Inability to Pay Appeals Costs has taken the valuable time away from Kahn's answer. This is just harassing being that the Appeal is moot.

## **I GROUNDLESS**

Barkley list four appeals. All but Appeal number 04-14-003 19CV has all the necessary fees have been paid. The Fourth Court of Appeals on June 20, 2014 ordered Kahn to pay clerks fees for preparing the record. **EXHIBIT C** On June

4

25, 2014, Kahn filed Affidavits of Inability to Pay Costs **EXHIBIT D**. Appeal number 04-14-0031 9CV is a case, where Kahn was disputing the payment of funds placed in the registry of the court until a Final Court Order detennining who owns the shares of Helvetia. A hearing with the trial Judge Tanner regarding the distribution of these funds. Judge Tanner denied Barclays motion on May 5, 2014 of Nunc Pro Tune to retrieve the funds. **EXHIBIT E.** However Barkley retrieved the funds in the registry a court on May 19 2014. The funds being gone from the registry of the Court made the Appeal moot and on July 1, 2014 Kahn filed a motion to dismiss Appeal number 04-14-0031 9CV **EXHIBIT F** and it was granted on July 9, 2014. **EXHIBIT G** Thus there is no need for the clerk submit the court record and there will be no costs. Barkley knew of the dismissal and her contest is groundless.

## $1,000,000 DIVERTED

Barkley has a accounting degree from George Washington University and has access to all of Kahn's accounts via a written statement to each Bank and had all hank account statements submitted to Helvetia since December 2013. In order to make a statement like "Kahn diverted as much as

5

$ 1,*000,000* of Helvetia's revenues before he was terminated." an accounting should have been made.. On page 10 and 11 of **Exhibit B, EXHIBIT H** shows a breakdown of the over $1,000,000 Diversion. The Joabert Development Company (Joabert") number. It says $110,492.43 and $20,000. See the bank statements dated January 31, 2012 **EXHIBIT I** which shows that $50,492.43 went to pay taxes and $16,000 went to Barkley's client Texas PMR. The other $40000 is from June 30. 2012 statement **EXHIBIT J** which shows that the $40,000 was put into Joabert account and then reversed and put back into the Helvetia account due to a computer error. The Accounting is for the $40,000 extra and does not deduct that amount. This is pure fraudulent accounting and Barkley should be sanctioned for just that act of thievery alone. The other $20,000 check went to Chase Credit card which **is** her clients credit card not mine. This false accusation of falsifying numbers to create an apparent diversion of funds by Kahn is a dastardly way to try to prove a case when the facts are not on PVL' s side.

Also an accounting of the total of revenues since Helvetia sold the first lot and an accounting of what funds were diverted. If this was done, (which would be surprising if it had not), then this accounting would have been included in the contest motion. See Bexar County listings of sales.

6

**EXHIBIT K**. There is no such accounting in the Motion. This remark is only to harass and is sanctionable. Barkley's knowledge and education warrant her to make a reasonable inquiry as to this claim. At a recent trial diversion claimed that an amount of $340,000 *was* diverted of which $291,280.61was placed in the registry of the court. The difference is the start up money Kahn placed into Helvetia and the expenses that were paid for the Joabert property. See **EXHIBIT L.**

Kahn owns *113* of the stock in Joabert Development Co. see **EXHIBIT M** contract between John Ripley and Burton Kahn. Kahn's responsibility was to do all the work including buying and selling property, engineering and construction supervision. The funds from the Key Largo Subdivision were to be spent on the development of the Joabert property. This is verified by Robert Ripley at the Temporary Injunction hearing of December *9,* 2014 to December 11, 2014. Volume 2, page 80, line 7 **EXHIBIT N.** In order for Barkley to come up with the fictitious number she used partial deposits without funds being dispersed to Joabert Property and to Helvetia property taxes and maintenance. This is an unscrupulous accounting use. There was LARGE equipment purchased and labor and materials and subcontractors were paid. CPS received approximately $80,000. Barkley has all the

data but chose not to LLSC it. This allegation is with smoke and mirrors by Haynes and Boone employee Lisa Barkley.

## STOCK VALUE $11 MILLION

The statement that "Kahn owns 1/3 of the stock in Joabert Development Co., which he contends is valued at over $11 million" is intended to have the reader that Kahn an asset of over $11 million. See **EXHIBIT M** Contract between Kahn and John Ripley for Joabert. There is a lawsuit Kahn v. Joabert 2013-Cl-i 7012. The parties are the same as in Joabert is owned by Kahn and John Ripley, where as the party in Helvetia are Puerto Verde Ltd. (a Bahamian Corporation not licensed to do business or maintain a suit in Texas, owned by Robert Ripley) John Ripley and Kahn. Kahn's claim for his one third ownership of stock is worth approximately $2.6 million, not $11 million. See Plaintiffs First Amended Petition, page 13 attached hereto as **EXHIBIT O**. Barkley claims that the Joabert Property is under water and has no value.

## LIBELOUS AND UNSUBSTANTIATED STATEMENTS

1. The statement, "Kahn has refused to divulge to the Chapter 7 bankruptcy trustee where he is maintaining bulk amounts of his cash or the amount cash he has on hand." is false and libelous. No affidavit from trustee.

2. The inference that there are 341 creditors instead of saying that the creditors meeting as per Bankruptcy Code ii § 341.

3. The statement, "Helvetia's monies from and between as many as twenty different bank a accounts, his testimony is not creditable." There are less than 20.

4. The Statement, "He still has credit cards." Is false because Kahn has filed Bankruptcy and Credit cards have been canceled.

5. The statement, The Affidavits failed to identify his ability to obtain a loan for court costs. As a Bankrupt person with only social security and a very small pension ($115 per month) Kahn cannot get a loan from a Bank.

6. The statement, 'The Affidavits failed to state whether an attorney is providing free legal services to Kahn without a contingent fee." There is no place for that statement and Barkley knows that Kahn does not have any attorney in these cases.

7. The statement, "Upon information and belief, Kahn has consistently consulted with his son, Howard Kahn, an experienced trial lawyer practicing in Houston." Barkley has no information about Howard Kahn and her belief is conclusory and harassing.

## **LOGIC**

Kahn was tasks to do all the work for both Key Largo Subdivision (Helvetia and Royal Crest Subdivision (Joabert). Funds were used to complete Royal Crest and to maintain Key Largo.

Key Largo is 215 completed lots and approximately 50 acres of land with a Lake. Taxes and maintenance needed to be paid for 8 years.

Royal Crest is over 90 Acres of land in development with construction costs and taxes and insurance.

There are no bills then where did the money come from? Barkley lists only deposits into accounts bu t does not mention costs. The spending of $1 million is not excessive when just the Taxes are over around $250,000.

In Nazi Germany in the 1930s to 1940s claimed 'If you tell a lie and it is a BIG lie and do it often people will believe" This is what has happened in this case. They tried to prove ownership in their case of 2013-CI-17516. That proof was contradicted by case 20 13-Cl-18394. Instead of disputing 18394 they came up with the wiring Instructions. **EXHIBIT P**. It is -a handwritten note by Robert Ripley crossing out the Title Companies name

and states that this is a receipt for $1.2 Million and 1000 shares of a Tex Holdeo. The court allowed document as evidence because of Ripley's handwriting. The receipt does not say who got it or who authorized it?? The BIG Lie like the over $1 million has been diverted. These lies need to be stopped.

## CONTINUED FLAGRANT FICTITIOUS STAEMENTS

Helvetia continues this lying campaign of lies into Bankruptcy Court. **Exhibit R** is a response to those lies of $1million. The back up of the costs is **Exhibit R-I,** which is a total of all the bank records from 2010 to September 2013 from Randolph Brooks Federal Credit Union and Falcon International Bank. It includes all the bank statements and copies of the checks. It also includes all the checks available. Review of these documents are proof of the deceit that Helvetia and Barkley have created.

## SANCTIONS ARE APPROPRIATE

*hi Wein v. Sherman,* 03-10-0049-CV      (Tex.App.-Austin 8-23-2013) states:

> "Chapter 10 allows sanctions for filing a pleading or
> motion "for any improper purpose, including to harass or
> to cause unnecessary delay or needless increase in the

11

cost of litigation." Tex. Civ. Prac. & Rem. Code § 10.001(1), .004. Rule 13 provides that a court may impose sanctions upon a determination that a pleading or motion is groundless and brought in bad faith or groundless and brought for the purpose of harassment. Tex. R. Civ. P. 13."

## SANCTIONS AGAINSTN KAHN IN 2013-CI-18394

Helvetia was awarded a sanction in case 2013-Cl-I 8394 of $253,416 for the attempted withdrawal of a Rule 11 Agreement. The same sizable sanction should be awarded to defendant by Barkley. See Judges Notes **EXHIBIT Q**

## CONCLUSION

Barkley has signed a motion that was not the signatories best knowledge and information and belief, after reasonable inquiry and was groundless. She has violated Tex. Civ. Prac. & Rem. Code §§ 10.001 (1), .004 and should be sanctioned. The same sizable sanction should be awarded to Defendant by Barkley and Helvetia as were awarded to Helvetia.

## PRAYER

For these reasons, Defendant, Kahn prays that Sanctions are awarded against Barkley.

Respectfully submitted,

*[signature]*

Burton Kahn Pro-se
1706 Alpine Cit,
San Antonio, TX 78248
glentrailyahoo. corn
Tel (210) 408-9199

| | | |
|---|---|---|
| State of Texas | § | Verification |
| County of Bexar | § | Tex. Civ. Prac. & Rem. Code §132.001 |

My name is Burton Kahn. I am over the age of 18 and am fully competent to make this unsworn declaration. My date of birth is in August 1933 and my address is 1706 Alpine Circle, San Antonio, Texas 78248. I declare under penalty of perjury that the foregoing is true and correct. Executed in Bexar County, Texas on the day of August 14, 2014

*[signature]*

CERTIFICATE OF SERVICE

I certify that a copy of Plaintiff, Helvetia Asset Recovery Inc., this Motion was served on Defendant Helvetia Asset Recovery Inc. through counsel of record on August 14, 2014 by

Via Email Lisa.Barkley@haynesboone.com
Haynes and Boone LLP

STATE OF TEXAS §

BEXAR COUNTY §

### VERIFICATION

Before me, the undersigned notary on this day personally appeared Burton Kahn the affiant, a person whose identity is known to me. After I administered the oath to affiant, affiant testified:

"My name is Burton Kahn I am overv18 years of age, sound mind, and capable of making this affidavit I have read the attached document. The facts stated in a within my personal knowledge and are true and correct."

_____
Burton Kahn

Sworn to and subscribed before me by Burton Kahn on August 14, 2014.

_____
Notary Public in and for
the State of Texas

My commission expires 11/17/15

6

# TABLE OF EXHIBITS

**EXHIBIT A** Jntervenor's Contest Motion

**EXHIBIT B** Plaintiff(Intervenor) Complaint to Bankruptcy Court.

**EXHIBIT C.** Court of Appeals order to pay fees.

**EXHIBIT D** Kahn's Affidavit of Inability to pay

**EXHIBIT E** Judge Tanner denial of Nunc Pro Tune

**EXHIBIT F** Motion to Dismiss Appeal

**EXHIBIT G** Appellate CourtOrder Granting Dismissal

**EXHIBIT H** List that made upn $1 million

**EXHIBIT I.** Bank Statement Jan 31, 2012

**EXHIBIT J** Bank Statement June 31, 2012

**EXHIBIT K** Bexar County List of Sales at Key Largo.

**EXHIBIT L** Disbursement to Registry and other Costs.

**EXHIBIT M** Joabert Contract between John Ripley and Burton Kahn

**EXHIBIT N** (Robert Ripley Testimony money to Joabert Vol. 2, P80,L7

**EXHIBIT 0** Joabert Suit First Amended Petition.

**EXHIBIT P** Plaintiff Exhibit 9 TIH) Wiring Instructions

**EXHIBIT Q** Judge Tanner Notes on Sanctions

**EXHIBIT R Response to** Plaintiff(Intervenor) Complaint to Bankruptcy Court.