

**SIGNED this 27th day of March, 2015.**

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 14-50980-CAG |
| | § | |
| BURTON M. KAHN, | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |

| | | |
|---|---|---|
| | § | |
| HELVETIA ASSET RECOVERY, INC., | § | |
| Plaintiff. | § | |
| | § | |
| v. | § | ADVERSARY NO. 14-05052-CAG |
| | § | |
| | § | |
| BURTON M. KAHN, | § | |
| Defendant. | § | |

### MEMORANDUM OPINION GRANTING PLAINTIFF HELVETIA ASSET RECOVERY, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 16)

Came on to be considered the above-numbered adversary proceeding and, in particular,

Plaintiff Helvetia Asset Recovery, Inc., Motion for Summary Judgment (ECF No. 16)[1]

("Summary Judgment Motion") filed October 23, 2014, the parties' responses, and supporting

_____
[1] Unless otherwise noted, all references to the ECF docket No. are to ADV. Case No. 14-05052.

evidence. For the reasons provided herein, the Court is of the opinion that Plaintiff's Summary Judgment Motion should be GRANTED.

## JURISDICTION

Although neither of the parties raised the issue of whether the Court has constitutional authority enter a final judgment, federal courts have an ongoing duty to examine their subject-matter jurisdiction, whether the issue is raised by the parties or sua sponte by the court. ***MCG, Inc. v. Great W. Energy Corp.***, 896 F.2d 170, 173 (5th Cir. 1990). In ***Stern v. Marshall***, the Supreme Court held that a bankruptcy court must have *both* statutory and constitutional authority to enter final judgment on certain state law claims. ***Stern v. Marshall***, 131 S. Ct. 2594, 2611 (2011) (finding that the bankruptcy court lacked the "judicial Power of the United States" under Article III of the United States Constitution to enter final judgment on a state law counterclaim).

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) relating to this Court's determination of the discharge of certain debts. Even after ***Stern***, bankruptcy courts have the constitutional authority to hear and finally determine dischargeability of debts in bankruptcy cases. ***Deitz v. Ford (In re Deitz)***, 469 B.R. 11, 23–24 (B.A.P. 9th Cir. 2012) *aff'd*, 760 F.3d 1038 (9th Cir. 2012). Determining the scope of a debtor's discharge is a fundamental part of the bankruptcy process. ***Farooqi v. Carroll (In re Carroll)***, 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011). As the ***Farooqi*** court explained:

> Congress clearly envisioned that bankruptcy courts would hear and determine all core proceedings, 28 U.S.C. § 157(b)(1), which include, as relevant here, "determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(I). The Supreme Court has never held that bankruptcy courts are without constitutional authority to hear and finally determine whether a debt is dischargeable in bankruptcy. In fact, the Supreme Court's decision in *Stern* clearly implied that bankruptcy courts have such authority when it concluded that bankruptcy courts had the constitutional authority to decide even state

law counterclaims to filed proofs of claim if the counterclaim would necessarily be decided through the claims allowance process. *Stern*, 131 S.Ct. at 2618.

*Id*. Because this case involves a determination as to the dischargeability of particular claims, this Court has both statutory and constitutional authority to enter a final judgment.

### LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Bankruptcy Procedure 7056 applies Rule 56(c) of the Federal Rules of Civil Procedure to adversary proceedings. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If summary judgment is appropriate, the Court may resolve the case as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Blackwell v. Barton*, 34 F.3d 298, 301 (5th Cir. 1994). The Fifth Circuit has stated "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To the extent that the non-moving party asserts the existence of factual disputes, the evidence offered by the non-moving party to support those factual contentions must be of a quality sufficient so that a rational fact finder might, at trial, find in favor of the non-moving party. *Matsushita*, 475 U.S. at 585–87 (1986) (non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) ("adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial"). If the record "taken as a whole, could not lead a

rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *LeMaire v. Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007). In determining whether a genuine issue of material fact exists, the non-moving party must respond to a proper motion for summary judgment with specific facts demonstrating that such genuine issue exists. A genuine issue of material fact is not raised by mere conclusory allegations or bald assertions unsupported by specific facts. *Leon Chocron Publcidad Y Editoria, S.A. v. Jymm Swaggart Ministries*, 990 F.2d 1253 (5th Cir. 1993).

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Helvetia Asset Recovery, Inc. ("Helvetia") seeks a determination that two state court judgments against Debtor/Defendant Burton M. Kahn ("Kahn") may be given preclusive effect and that this Court should find on the basis of those judgments that the judgment debts are non-dischargeable under 11 U.S.C. § 523(a)(2012).[2] Helvetia alleges in its Complaint the following operative facts:

Helvetia is a Texas corporation with a sole shareholder—Puerto Verde, Ltd., a Bahamian corporation. Puerto Verde's sole shareholder is Robert Ripley ("Ripley"). Complaint (ECF No. 1) ("Cmplt.") at ¶1. Helvetia was formed for the purpose of developing the Key Largo subdivision in Converse, Texas. Ripley hired Kahn to sell property lots in the subdivision to homeowners or home buyers. Cmplt. at ¶5. In late 2009, Ripley made Kahn director and president of Helvetia to manage the sale of lots. The Complaint alleges that Kahn misappropriated as much as $1 million of Helvetia funds for his personal use. Cmplt. at ¶6. As a result, Ripley attempted to remove Kahn's access to Helvetia funds in September 2013. Cmplt. at ¶7. The Complaint alleges that after Ripley attempted to remove Kahn, Kahn continued to

---

[2] Unless otherwise noted, all references herein are to Title 11, 11 U.S.C. § *et seq.*

misappropriate Helvetia funds and that Kahn transferred Helvetia's remaining funds to bank accounts that Kahn controlled in the approximate amount of $340,000.00. Cmplt. at ¶7.

The Complaint details a number of transactions and acts that Kahn allegedly committed while he was president of Helvetia and thereafter when Ripley attempted to remove him. The acts alleged fall generally into the categories of misappropriation of cash, real property, and stock. The Complaint states that Kahn emptied Helvetia's bank accounts—transferring approximately $340,000 in Helvetia funds from the sale of lots into bank accounts of entities Kahn controlled.[3] Kahn also purportedly printed a Helvetia "stock certificate," claiming to purchase the company for a mere $1,000 after "canceling" Puerto Verde's stock ownership based on "forgeries" from 2007. Then, claiming to still be president of Helvetia, Kahn signed and recorded a warranty deed that purported to convey the entire Key Largo subdivision to Paradiv, Kahn's sham corporation. The conveyance included all of the lots Helvetia had already sold and on which houses had been built and where families were living. Paradiv gave no consideration for the attempted conveyance, and as part of the state court litigation, Kahn's warranty deed was deemed fraudulent and a nullity in December 2013. Cmplt. at ¶18.

After filing the fraudulent warranty deed to convey Helvetia's lots to Paradiv, Kahn sued Helvetia in state court (the "Kahn Suit") to invalidate six lot sales Helvetia closed after it terminated Kahn's employment, claiming Helvetia's sales were fraudulent and accomplished without authority. The Kahn Suit culminated in a final judgment on April 1, 2014, adverse to Kahn. The state court found that Kahn had no ownership interest in Helvetia, and that his warranty deed transferring Helvetia's lots to Paradiv was a fraudulent record in violation of state

---

[3] The Complaint lists specifically four entities that Kahn controlled—Contour Construction, Joabert Development, Trail Construction, and Ideal Concepts.

statutory laws. The state court awarded Helvetia over $250,000 in sanctions, which remain unpaid. Kahn has appealed this judgment. Cmplt. at ¶33.

Helvetia brought its own suit (the "Helvetia Suit") against Kahn in state court for his breach of fiduciary duty and other unlawful acts. Kahn then filed a pro se Chapter 7 case on April 14, 2014. On April 28, 2014, the Court lifted the automatic stay to permit the state action to proceed to trial. *In re Burton Kahn,* Bankruptcy Case No. 14-50980, ECF No. 39. Helvetia alleged in its state court action against Kahn that he never compiled financial statements. Helvetia alleges that Kahn had garbage bags of documents, including receipts and unopened letters unorganized by date or otherwise. Consequently, Helvetia estimates that Kahn stole money from Helvetia in perhaps as many as 100 different transactions beginning in early 2010 shortly after he was hired. Helvetia focused on three categories of damages in presenting its case to the state court jury in May 2014:

- Kahn's theft of $340,000 when he was terminated, which was summarized with limited bank records;

- A $380,166 "loan to shareholder" reflected in Helvetia's 2012 tax return where Kahn stated under oath he was Helvetia's sole shareholder; and

- Damages related to lost property sales which the jury found to be $133,000. Cmplt. at ¶35.

In unanimously finding Kahn liable, the jury held Kahn responsible for breach of fiduciary duty, slander of title, money had and received, and filing a fraudulent court record. The jury also found by clear and convincing evidence that Kahn committed theft of Helvetia's property, and that he acted either maliciously, fraudulently, or through gross neglect, with malice defined by the court as Kahn's specific intent to cause substantial injury or harm to Helvetia. The court entered its final judgment on June 11, 2014, assessing almost $880,000 in actual damages, including prejudgment interest, $900,000 in exemplary damages, and $280,000 in

6

attorneys' fees. The state court denied Kahn's Motion for Judgment notwithstanding the Verdict. Cmplt. at ¶¶9, 36.

**DISCUSSION**

Helvetia filed its Motion for Summary Judgment on October 23, 2014. Helvetia seeks judgment as a matter of law through the application of collateral estoppel. Helvetia argues that the bases of Kahn's liability to Helvetia have been adjudicated in the two state court lawsuits. Helvetia argues that all of the underlying fact issues were litigated, and the particular claims and resulting judgments are binding on the ultimate fact issues in this adversary proceeding. Helvetia posits that based on those findings of fact, claims and judgments, Kahn's judgment debt to Helvetia arose as a result of conduct that precludes dischargeability of the debt under § 523(a).

Kahn's Response (the "Response") (ECF No. 30) argues that collateral estoppel does not apply because the state court determinations were not final decisions and required the state court to make further findings. Response at pp. 3–4. Kahn argues that he did not have the opportunity to provide certain evidence and that the state trial court denied a number of his requests to provide further pleading or evidence. Kahn asserts that the trial court's failure to consider his requests resulted in his inability to litigate fully matters before the state court trial court. Kahn attaches his affidavit in support of his Response that indicates he is the custodian of records for himself with bank statements of a number of his companies. There are no specific references to any of the pages of Kahn's Exhibits in support of his Response other than the Exhibits themselves nor are there any statements in Kahn's affidavit that refute or provide an evidentiary basis to suggest a contested issue of material fact. In sum, Kahn contends he did not have an opportunity for a fair trial at state court and argues he has created disputed facts by simply attaching to his affidavit, without any reference to, portions of what he filed in state court.

A cursory review of the Kahn's Exhibits indicates roughly 4,000 pages of 121 documents that are neither indexed nor tabbed. The Response is without citation to any of the pages of the Kahn's Exhibits or an assertion as to why a particular exhibit supports a disputed issue of fact or raises and issue for trial. "It is well settled that the court is not obligated to comb the record in search of evidence that will permit a nonmovant to survive summary judgment." *Petrie v. City of Grapevine*, 904 F. Supp. 2d 569, 586-87 (N.D. Tex. 2012) (citations omitted). Rather, Rule 56 "saddles the non-movant with the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment[.]" *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir.1996); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir.1996).

## A.   Bankruptcy Courts May Give Preclusive Effect to State Court Judgments.

The doctrine of collateral estoppel is applicable to bankruptcy nondischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 291(1991); *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1294 (5th Cir. 1995); *Daniels v. The Equitable Life Assurance Society*, 35 F.3d 210, 212 (5th Cir. 1994). "[P]arties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability [and] collateral estoppel can provide an alternate basis to satisfy the elements of § 523(a)(6)." *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (quotation marks and alterations omitted). "In other words, when an issue that forms the basis for the creditor's theory of non-dischargeability has been actually litigated in a prior proceeding, neither the creditor nor the debtor may relitigate those grounds." *RecoverEdge, L.P.*, 44 F.3d at 1294. While the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is

dischargeable. *Grogan*, 498 U.S. at 285 n.11 (1991); *Simpson & Co. v. Shuler* (*In re Shuler*), 722 F.2d 1253, 1255 (5th Cir. 1984).

When giving preclusive effect to a state court judgment the Court applies the issue preclusion rules of that state. *Marrese v. American Academy of Orthopedic Surgery*, 470 U.S. 373 (1985); *Miller v. J. D. Abrams, Inc.* (*In re Miller*), 156 F.3d 598, 601 (5th Cir. 1998). Collateral estoppel under Texas law prevents the relitigation of identical issues of law or fact that were actually litigated and were essential to the final judgment in a prior suit. *Gober v. Terra + Corp.* (*In re Gober*), 100 F.3d 1195, 1201 (5th Cir. 1996) (citing *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984)); *Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001). Specifically, a party is collaterally estopped from raising an issue under Texas law when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case. *Bonniwell*, 663 S.W.2d at 818. "Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties." *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985); *see also*, *In re Pancake*, 106 F.3d at 1244.

Similarly, in this Court "the requirement that an issue be 'actually litigated' for collateral estoppel purposes simply requires that the issue is raised, contested by the parties, submitted for determination by the court, and determined." *In re Keaty*, 397 F.3d at 272 (citing *James Talcott, Inc. v. Allahabad Bank, Ltd.*, 444 F.2d 451, 459–60 (5th Cir.1971)).

The principles of issue preclusion are still properly applied notwithstanding the fact that Kahn has appealed the two final judgments or that the appeals remain pending. "[F]or purposes of collateral estoppel, a judgment may be final even though an appeal is pending or a lower court

has yet to fully dispose of the matter from which the issue arises." *Guion v. Sims (In re Sims)*, 479 B.R. 415, 422–23 (Bankr. S.D. Tex. 2012) (citing *Prager v. El Paso Nat'l Bank*, 417 F.2d 1111, 1112 (5th Cir. 1969)); *Andres Holding Corp. v. Villaje Del Rio, Ltd.*, No. SA-09-CV-127-XR, 2010 U.S. Dist. (W.D.Tex. Oct. 19, 2010).

**B.**     **The Helvetia and Kahn Suits Were Fully Litigated.**

Helvetia argues that the facts at issue were submitted to the jury in the Helvetia Suit and provide the basis for finding non-dischargeability under § 523(a)(4). The jury charge included questions about breach of fiduciary duty, fraudulent court records, slander of title, and exemplary damages.[4] The charge requested findings about Kahn's state of mind in connection with his breach of fiduciary duty with specific instructions defining Texas law about his culpability and to determine whether exemplary damages could be lawfully awarded.

In reaching its unanimous verdict the jury made the following findings:

a. Kahn damaged Helvetia by breaching his fiduciary duty.

     i. By clear and convincing evidence:

          1. Kahn committed his breach of fiduciary duty maliciously, fraudulently, or through gross negligence;[5]

          2. Kahn intentionally misapplied money or real estate lots owned by Helvetia and valued at $1,500 or greater in a manner that involved substantial risk of loss to Helvetia;[6] and

          3. Kahn committed theft of property valued at $20,000 or greater.

b. Kahn filed a fraudulent court record or claim against Helvetia's real property with knowledge that it was fraudulent;

c. Kahn slandered Helvetia's title to its real estate;[7] and

---

[4] *See* Jury Charge contained in Plaintiff's Exhibit 1, pp. 15–19, to the Motion for Summary Judgment.
[5] Jury Question Nos. 1 and 2.
[6] Jury Question No. 13.

    d. Kahn held money which in equity and good conscience belonged to
       Helvetia.

As shown in Helvetia's Exhibits 1, 3 (Final Judgment and Order on Sanctions), and 5 (record on Appeal to the Fourth Court of Appeals), the parties participated in the jury trial of the Helvetia Suit, and all issues pertinent to nondischargeability of the Final Judgment in this adversary proceeding under §§ 523(a)(4) and (6) were "actually litigated." Consequently, the parties are collaterally estopped from relitigating any of the issues as part of this action. *See **In re Grogan v. Garner***, 498 U.S. at 284–85 (citations omitted).

## C.    <u>The Issues in the Kahn Suit Were Fully Litigated as to Dischargeability.</u>

As detailed in its original and amended motions for sanctions, Helvetia placed into issue questions of fact about Kahn's conduct in filing a fictitious lawsuit under Helvetia's name, and his efforts to prolong the resulting cloud on Helvetia's title and the litigation itself.[8] Helvetia sought $760,000 in sanctions based on the fees and costs it incurred relating to Kahn's fictitious suit and to serve as a deterrent for future bad acts. Accordingly, Kahn was aware Helvetia was seeking a substantial monetary sanction and was otherwise fully apprised of the possibility he would be sanctioned. In the state court's April 1, 2014 Final Judgment and Order of Sanctions (the "Sanctions Judgment" or "SJ"; *see* Exhibit 2), Kahn and his attorney, Terry George, were sanctioned jointly and severally $153,416 for reasonable attorneys' fees incurred by Helvetia as a direct and proximate result of Kahn's fictitious filings and his attempted withdrawal of a Rule 11 Agreement, and $100,000 for the lack of due diligence into the facts and the law before filing the fictitious Kahn Suit. The state court made extensive findings about Kahn's bad faith, harassment and his culpable state of mind.[9] It determined that Kahn caused a willful and malicious injury to

---

[7] Jury Question No. 6.
[8] *See* Plaintiff's Exhibit 6 (Helvetia's sanctions motions and Kahn's responses).
[9] *See* Exhibit 2 to Plaintiff's Motion, pp. 20–24 of the Final Judgment and Order of Sanctions.

Helvetia, and justified an order of sanctions. Moreover, the parties participated in the evidentiary hearing on Helvetia's sanctions motions, and all issues pertinent to nondischargeability of the Sanctions Judgment in this adversary proceeding under §523(a)(6) were "actually litigated." Therefore, the parties are collaterally estopped from relitigating any of the issues as part of this action. *Id.*

Kahn argues that the sanctions judgments were erroneously granted against him and that the sanctions orders issued against Kahn's counsel in the state court were for conduct that Kahn did not authorize. There is nothing in the sanctions judgment that suggests that Kahn was unaware or did not participate in the conduct that gave rise to the sanctions judgments. The summary judgment evidence before the Court demonstrates that Kahn filed frivolous litigation, and, after numerous attempts at attempting to reach an agreement, continued to defy court orders and Rule 11 agreements. Kahn is responsible for the acts that form the basis of the sanctions judgment.

**D.** **Helvetia's Final Judgment Against Kahn in the Helvetia Suit is Non-Dischargeable under §523(a)(4) for Breach of Fiduciary Duty.**

A breach of fiduciary duty may only occur if a fiduciary relationship existed. A fiduciary relationship may be based on formal or informal relations in which one person places a special confidence in another who, in equity and good conscience, is bound to act in good faith and with due regard for the interest of the person placing the confidence. *See Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980); *Lacy v. Ticor Title Ins. Co.*, 794 S.W.2d 781, 788 (Tex. App.—Dallas 1990), *writ denied*, 803 S.W.2d 265 (Tex.1991). Helvetia correctly argues that fiduciary duties can be extended to corporate officers when a corporate officer diverts a corporate opportunity to himself, or if the transaction is made while the corporation is insolvent. *See Dyer v. Shafer et al.*, 779 S.W.2d 474, 477 (Tex. App.—El Paso 1989) (creditor may

challenge the breach if the transaction is made to defraud creditors). The burden of establishing the existence of a fiduciary relationship rests with Plaintiff. *Priddy v. Rawson*, 282 S.W.3d 588, 599–600 (Tex. App.—Houston [14th Dist.] 2009, pet. denied)

Section 523(a)(4) does not discharge a debtor from debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." *Gupta v. E. IdahoTumor Insti., Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir.2004); *Walser v. Texas Music Group, Inc., et al. (In re Antone's Records, Inc.)*, 445 B.R. 758 (Bankr. W.D. Texas 2011). The Fifth Circuit has found "that this discharge exception was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *In re Miller*, 156 F.3d at 602 (citing *In re Boyle*, 819 F.2d 583, 588 (5th Cir. 1987)); *Tex. Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339 (5th Cir. 1998).

When a corporate officer or director diverts assets of the corporation to his own use or gains a benefit, he breaches his fiduciary duty of loyalty to the corporation, willful and fraudulent acts may be presumed, and the transaction is presumptively fraudulent. *In re Sherali*, 490 B.R. 104, 123 (Bankr. N.D. Tex. 2013). Thus, any misappropriation of corporate property by a corporate officer or director is a fiduciary defalcation within the meaning of § 523(a)(4). *In re Jackson*, 141 B.R. at 918–19 (citing *John P. Maguire & Co. v. Herzog*, 421 F.2d 419, 422 (5th Cir.1970)).

"Once it is established that specific money or property has been obtained by fraud, . . . 'any debt' arising therefrom is excepted from discharge." *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998); *see also Snook v. Popiel (In re Snook)*, 168 Fed. App'x 577, 578 (5th Cir. 2006); *In*

*re Sherali*, 490 B.R. at 125. Though the facts in *Cohen* specifically addressed a liability rendered non-dischargeable under the actual fraud prong of § 523(a)(2)(A), its rationale to prevent a discharge of all liability arising from circumstances that render a debt non-dischargeable under § 523(a) has been extended to cases in which the primary debt is rendered non-dischargeable due to fraud or defalcation while acting in a fiduciary capacity. *Drexel Highlander Ltd. P'Ship v. Edelman (In re Edelman)*, 2014 WL 1796217, at *43 (Bankr. N.D. Tex. May 6, 2014); *Conte v. Woomer (In re Woomer)*, 2013 WL 5536072, at *18 (Bankr. E.D. Tex. Oct. 7, 2013).

In the state court trial, the jury found by clear and convincing evidence that Kahn's conduct in breaching his fiduciary duty constituted both theft and an intentional misapplication of Helvetia's money or real property in a manner that involved substantial risk of loss to Helvetia, meaning that it was more likely than not that Helvetia would suffer the loss.[10] Under the Texas Theft Liability Act, "theft" means unlawfully appropriating property with intent to deprive the owner of the property.[11] "Misapply" means where a person deals with property or money contrary to an agreement under which the person holds the property or money.[12] "Substantial risk of loss" means more likely than not that loss will occur.

The jury also found by clear and convincing evidence that Kahn committed his breaches of duty maliciously, fraudulently, or through gross negligence, and attributed actual damages of $854,166 and exemplary damages of $900,000 to this heightened level of culpability by Kahn.[13] The Court finds that these findings fall well within the Supreme Court's 2013 finding that defalcation as used in § 523(a)(4) "includes a culpable state of mind requirement," which

---

[10] *See* Plaintiff's Exhibit 1, Jury Question Nos. 11, 12, and 13.
[11] Tex. Civ. Prac. & Rem. Code § 134.002(2).
[12] *Id*. at § 41.008(b) and (c)(10).
[13] *See* Plaintiff's Exhibit 1, Jury Question Nos. 1 and 10.

involves the "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754, 1757 (2013).

Additionally, when the underlying debt is non-dischargeable due to willful or malicious conduct, fraud, or intentional breach of fiduciary duty, the related attorneys' fees and exemplary damages are also non-dischargeable. *In re Sherali*, 490 B.R. at 125 (citing *In re Gober*, 100 F.3d at 1208; *Stokes v. Ferris (In re Stokes)*, 150 B.R. 388, 393 (W.D. Tex. 1992)); *see also, Pak, et al. v. Kim (In re Kim)*, 2013 WL 5376526, Bankr. E.D. Tex. Sept. 25, 2013) (citing *Cohen*, 523 U.S. at 218)); *In re Edelman*, 2014 WL 1796217, at *43.

## E.    The Sanctions Award against Kahn in the Kahn Suit are Non-Dischargeable under § 523(a)(6) as Willful and Malicious Injury

Helvetia also argues that Kahn's debts arising from the sanctions award against him in the Kahn Suit are also non-dischargeable because they constitute willful and malicious injuries to Helvetia caused by Kahn. Section 523(a)(6) provides that an individual debtor will not get a discharge from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." For the act to be willful and malicious "a debtor must have acted with 'objective substantial certainty or subjective motive' to inflict injury." *In re Williams*, 337 F.3d 504, 508–09 (5th Cir. 2003) (citing *In re Miller*, 156 F.3d 598, 603 (5th Cir. 1998)). Whether the acts were substantially certain to cause injury (the "objective test") is based on "whether the [d]efendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's *subjective* intent was to inflict a willful and malicious injury on the Plaintiff." *In re Powers*, 421 B.R. 326, 335 (Bankr. W.D. Tex. 2009) (emphasis in original). A subjective motive to cause harm (the "subjective test") exists when a tortfeasor acts "deliberately and intentionally, in knowing disregard of the rights of another." *See Miller*, 156 F.3d at 605-06 (adopting the definition of "implied malice" from *In re Nance*, 566 F.2d 602, 611 (1st Cir. 1977)).

The Supreme Court has determined that the word "willful" under § 523(a)(6) modifies the word "injury," indicating that a finding of nondischargeability requires a deliberate or intentional injury, not merely a deliberate act that results in injury. *Kawaauhua v. Geiger*, 523 U.S. 57, 61 (1998). In defining the term "malicious" under § 523(a)(6), the Fifth Circuit holds that it means "implied malice," as opposed to "special malice." *Miller*, 156 F.3d at 605. "Implied malice" means "acts done with the actual intent to cause injury," whereas "special malice" requires a showing of a motive to harm. *Id.* The Fifth Circuit, in recognizing that the definition of implied malice is the same standard used by the Supreme Court for "willful injury," held that a finding of implied malice can render a debt non-dischargeable under § 523(a)(6). *Id.* (discussing *Kawaauhua*, 523 U.S. 57).

Helvetia argues that Kahn's intent to harm Helvetia by recording a false record and slandering its title also falls within the ambit of § 523(a)(6). *In re Gamble-Ledbetter*, 419 B.R. at 698–99) (harm to personal or property rights is covered by §523(a)(6)); *Ward Family Found. v. Arnette (In re Arnette)*, 454 B.R. 663, 700 (Bankr. N.D. Tex. 2011). The Court finds that by knowingly and deliberately engaging in an unauthorized diversion of Helvetia's funds, Kahn acted in a manner substantially certain to cause financial loss and injury to the Helvetia, and, therefore inflicted a willful and malicious injury upon Helvetia. *See In re Sherali*, 490 B.R. at 120; *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 699 (Bankr. E.D. Tex. 2009); *In re Utley*, 2010 WL 3342242, at *4; *see also*, 4 COLLIER ON BANKRUPTCY ¶ 523.12[4] at p. 523–96 (16th ed. 2009); TEX. CIV. PRAC. & REM.CODE § 134.002(2) (regarding theft); *McCullough v. Scarbrough, Medlin & Assoc., Inc.,* No. 05-11-01303-CV (Tex. App.—Dallas June 20, 2014, pet. filed) (same); *In re Hantla*, No. 10-32074-SGJ-7, Adversary No. 10-03200 (Bankr. N.D. Texas March 25, 2011).

The Fifth Circuit has found that the "fully and fairly litigated" prong of the test can be met where the prior action was a sanctions proceeding. *In re Gober*, 100 F.3d at 1202; *In re*

*Keaty*, 397 F.3d at 269; *see also*, ***In re Webb***, 2014 WL 812782 (E.D. Tex. Feb. 13, 2014) (plaintiff entitled to partial summary judgment that debt arising from state court sanctions order was non-dischargeable, finding that sanctions order provided sufficient factual foundations and prevented relitigation of identical issues). Based on the evidence presented in the Kahn Case, the state court made specific factual findings as the foundation for issuing its judgment sanctioning Kahn. The court found that Kahn engaged in "willful and malicious injury … to another entity or to the property of another entity" in incurring his debt to Helvetia, making the sanctions obligation to Helvetia non-dischargeable under § 523(a)(6).[14]

The state court found that Kahn's suit was fictitious, frivolous, and groundless.[15] The Fifth Circuit has held that presenting frivolous claims and engaging in deliberate and needlessly prolonged litigation is sufficient injury for purposes of § 523(a)(6). *See **In re Keaty**,* 397 F.3d at 264. In ***Keaty***, the wrongful conduct alleged against the debtor included knowingly filing a suit without foundation and "crafted for the purpose of harassment." 397 F.3d at 274. The Fifth Circuit determined that the debtor's actions in that case were "designed to deliberately prolong the proceedings unnecessarily"—an objective that was "substantially certain to injure [plaintiff], since deliberately and needlessly prolonging the proceedings would necessarily cause [plaintiff] financial injury." *Id*.

The state court found that the evidence established Kahn filed the Kahn Suit for the "malicious purpose" of claiming ownership of Helvetia, and "for the purpose of causing harm to others," including bona fide purchasers for value, by attempting to invalidate six lots sales made by Helvetia to a builder."[16]   More specifically, Kahn filed his suit to maliciously cloud the title of the six lots, "and thus to interfere and harm Helvetia's business," and with the intent to "chill

---

[14] *See* Plaintiff's Exhibit 2, Final Judgment and Order on Sanctions, ¶¶ 52-56.
[15] *See* Plaintiff's Exhibit 2, Final Judgment and Order on Sanctions,  ¶¶ 10, 25, 26, 35.
[16]  SJ ¶¶ 3, 4, 7, 22.

Helvetia's future sales of property," based on Kahn's knowledge his claims "would make builders, lenders and title companies reluctant to close on property sales by Helvetia" if they thought Kahn would make adverse ownership claims to the property.[17]

Moreover, Kahn used the fictitious lawsuit with the intent to harm Helvetia by using it to "extort revenues earned by Helvetia after it had terminated Mr. Kahn's employment," and to "retaliate or 'get even' against" Helvetia."[18] In *Shcolnik v. Rapid Settlements Ltd.*, the Fifth Circuit commented in dicta that the behavior of a company's former officer would result in willful and malicious injury if his false claims of ownership of the company "were made in bad faith as a pretense to extract money from the [company]." *(In re Shcolnik)* 670 F.3d 624, 631 (5th Cir. 2012). Abusing the judicial process to cause unnecessary delay or harassment can serve as the basis for finding willful and malicious behavior. *In re Keaty*, 397 F.3d at 274; *In re Scarborough*, Bankruptcy Case No. 12-60683-RBK, Adversary Case No. 12-6031-RBK, (Aug. 29, 2014, W.D. Tex.) (an injury that is recognizable for purposes of willful and malicious fraud is forcing another person to expend unnecessary money and time) (citing *Schubert Osterrieder & Nickelson PLLC v. Bain (In re Bain)*, 436 B.R. 918, 924 (Bankr. S.D. Tex. 2010)). Therefore, Kahn's debts arising from the sanctions award in the Kahn Suit are non-dischargeable under § 523(a)(6).

## CONCLUSION

Having gone through the facts of the case and considered the arguments made by the parties, this Court finds that: (1) collateral estoppel precludes relitigation of the facts tried in state court; (2) all issues underlying dischargeability were fully litigated in the Helvetia suit; (3) all issues underlying dischargeability were fully litigated in the Kahn suit; (4) the Helvetia Final

---

[17] SJ ¶ 48.
[18] SJ ¶ 48.

18

Judgment establishes a non-dischargeable debt under § 523(a)(4); (5) exemplary damages and attorney's fees are non-dischargeable under § 523(a)(4); and (6) both the state court judgments are non-dischargeable under § 523(a)(6).

A separate order granting the Plaintiff's Motion for Summary Judgment will be entered.

# # #